1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

9  Abisuk Sinsaeng,                        No. CV-15-00701-PHX-SRB (ESW)

10              Petitioner,              **REPORT AND**
                                        **RECOMMENDATION**
11  v.

12  Loretta Lynch, et al.,

13              Respondents.

14

15

16  **TO  THE  HONORABLE  SUSAN  R.  BOLTON,  UNITED  STATES  DISTRICT**

17  **JUDGE:**

18          Pending before the Court is Petitioner Abisuk Sinsaeng's ("Petitioner") Verified

19  Petition for Writ of Habeas Corpus (the "Petition") (Doc. 1) filed pursuant to 28 U.S.C. §

20  2241.  Respondents have filed their Response (Doc. 13), to which Petitioner has replied

21  (Doc. 14).  The matter is deemed ripe for consideration.

22          Petitioner is a citizen of Thailand and a lawful permanent resident in the United

23  States.  Petitioner has been detained by Immigration and Customs Enforcement ("ICE")

24  since  the  initiation  of  removal  proceedings  in  2012.   The  Petition  raises  six  claims

25  challenging  the  legality  of  Petitioner's  continued  detention.   Because  the  undersigned

26  finds that the claims are without merit, it is recommended that the Petition be denied.

27

28

## I. BACKGROUND

Petitioner was born in Thailand.  In 1983, at the age of nine, Petitioner became a lawful permanent resident in the United States.  (Doc. 1-3 at 8; Doc. 13-1 at 7).  While living in the State of California, Petitioner received criminal convictions in two separate cases.

Petitioner received his first criminal conviction in 2001.  The California Superior Court, County of Sacramento, found Petitioner guilty on one count of simple battery.  The court sentenced Petitioner to (i) forty-five days in jail; (ii) a three-year term of probation; and (iii) fifty-two weeks of anger management classes.  (Doc. 1-3 at 15).

In 2007, the California Superior Court, County of Sacramento, convicted Petitioner of (i) annoying and molesting a child; (ii) sexual battery; and (iii) four counts of preventing or dissuading a victim or a witness.  (*Id*. at 2).  The court sentenced Petitioner to nine years in prison.  (*Id*.).

The California Department of Corrections determined that Petitioner would be released in June 2012.  Before Petitioner was released, ICE initiated removal proceedings against Petitioner pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, which is codified at 8 U.S.C. § 1227(a)(2)(A)(iii).[1]  (Doc. 13-1 at 12).  In 2012, the California Department of Corrections released Petitioner directly to ICE custody.  (*Id*.).

On December 18, 2012, an Immigration Judge ("IJ") ordered Petitioner removed from the United States to Thailand.  (*Id*. at 23).  After the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal, Petitioner filed a Petition for Review in the Ninth Circuit Court of Appeals.  (*Id*. at 27-36).  The Ninth Circuit granted Petitioner's motion

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "any alien who is convicted of an aggravated felony at any time after admission is deportable."  The aggravated felony underlying Petitioner's order of removal is "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year."  (Doc. 13-1 at 9, 27-29); 8 U.S.C. § 1101(a)(43)(S).

for stay of removal.  (*Id*. at 32).  The Petition for Review is pending as of the date of this Report and Recommendation.

In August 2013, ICE issued a decision ordering the continued detention of Petitioner pending resolution of the Petition for Review.  (*Id*. at 12-13).  In December 2013, an IJ conducted a hearing to determine whether Petitioner should be released on bond.  (Doc. 1-3 at 2-6).  The IJ found that Petitioner posed a present danger to the community and denied Petitioner's release.  (*Id*.).  The BIA dismissed Petitioner's appeal of the IJ's decision.  (Doc. 13-1 at 38).

In August 2014, ICE informed Petitioner that he would remain in custody while his Petition for Review is pending before the Ninth Circuit.  (*Id*. at 40-41).  Petitioner is currently in custody at the Eloy Detention Center in Eloy, Arizona.

On April 17, 2015, Petitioner filed the Petition (Doc. 1) seeking federal habeas relief.

## II.  LEGAL STANDARDS

### A.  Detention of Aliens Pending Removal Proceedings

Pursuant to 8 U.S.C. § 1226(a), the United States Attorney General (the "Attorney General") may issue a warrant directing that an alien be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as otherwise provided in 8 U.S.C. § 1226(c), the Attorney General may release the alien on (i) a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General or (ii) conditional parole.  8 U.S.C. § 1226(a)(2).

The Attorney General's discretionary judgments regarding release of aliens pending deportation are not subject to judicial review.  8 U.S.C. § 1226(e) states that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Despite 8 U.S.C. § 1226(e), however, the Ninth Circuit Court of Appeals has held that a

district court may review "bond hearing determinations for constitutional claims and legal error," which include claims involving the "application of law to undisputed facts, sometimes referred to as mixed questions of law and fact." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (quoting *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam)).

### B. Availability of Habeas Relief

#### 1. Section 2241 Petitions

Where a petitioner is in custody in violation of the Constitution or laws or treaties of the United States, 28 U.S.C. § 2241(c)(3) authorizes federal district courts to issue habeas corpus relief. "[C]laim[s] that the INS somehow failed to exercise discretion in accordance with federal law or did so in an unconstitutional manner" are cognizable in a Section 2241 proceeding. *Guiterrez-Chavez v. I.N.S.*, 298 F.3d 824, 929 (9th Cir. 2002). "But habeas is not available to claim that the INS simply came to an unwise, yet lawful, conclusion when it did exercise its discretion." *Id.* To invoke a district court's jurisdiction over a Section 2241 petition, "a petitioner must allege at least a colorable constitutional violation. To be colorable in this context, the alleged violation need not be 'substantial,' but the claim 'must have some possible validity.'" *Torres–Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001) (citations and internal quotation marks omitted). A habeas petitioner "may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Id.*

#### 2. Proper Respondent to an Alien Detainee's Section 2241 Petition

In *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), the Supreme Court held that in "habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." This is known as the "immediate custodian rule." The Supreme Court in *Padilla* observed that the circuits are divided on the issue as to whether the immediate custodian rule applies to habeas petitions filed by aliens detained pending deportation. *Id.* at 435 n.8. The Court noted that a Ninth Circuit

case, *Armentero v. INS* ("*Armentero I*"), 340 F.3d 1058 (9th Cir. 2003), held that the Attorney General and the Secretary of the Department of Homeland Security ("DHS") are the proper respondents in those cases.  *See Armentero I*, 340 F.3d at 1071 (concluding that "the most appropriate respondent to petitions brought by immigration detainees is the individual in charge of the national governmental agency under whose auspices the alien is detained").  However, the Ninth Circuit has withdrawn *Armentero I* and the opinion may not be cited as precedent.[2]

Although recognizing a circuit split, the Supreme Court has not resolved whether the immediate custodian rule applies to petitions filed by aliens detained pending deportation.  *Padilla*, 542 U.S. at 435 n.8 (noting that the Court left the question open in a prior case, but again declining to resolve the issue as the issue was not before the Court); *Ahrens v. Clark*, 335 U.S. 188, 193 (1948).  In addition, the Ninth Circuit Court of Appeals has not addressed the issue since it withdrew its *Armentero I* opinion.[3]

Several district courts within the Ninth Circuit, including the District of Arizona, have not applied the immediate custodian rule in habeas proceedings filed by detained aliens.  *See Rivera v. Holder*, 307 F.R.D. 539, 544 n.1 (W.D. Wash. 2015); *Bogarin-Flores v. Napolitano*, No. 12cv0399 JAH(WMC), 2012 WL 3283287, at *2 (S.D. Cal. Aug. 10, 2012) (concluding that because the warden of the facility holding alien detainee has no authority to release the detainee, the Attorney General and DHS should remain as respondents in detainee's habeas proceeding); *Aduord v. Lynch*, No. CV-15-01237-PHX-NVW (BSB), 2015 WL 7306678, at *2-3 (D. Ariz. Oct. 26, 2015) (magistrate judge

---

[2] The Ninth Circuit reheard the case and issued *Armentero v. INS* ("*Armentero II*"), 412 F.3d 1088 (9th Cir. 2005).  *Armentero II* did not decide whether the "immediate custodian rule" applies to petitions filed by aliens detained pending deportation.  Judge Berzon filed a dissenting opinion indicating that she would reaffirm the holding in *Armentero I*.  *Id*. at 1090.

[3] It is noted that the Attorney General, Director of DHS, an ICE Field Officer Director, and a sheriff were respondents in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), a habeas case filed by an alien detainee who challenged an IJ's denial of bond following a *Casas* hearing.

recommended that the Court not apply the immediate custodian rule to habeas petition filed by alien detainee), *Report and Recommendation adopted by*, 2015 WL 7300055 (D. Ariz. Nov. 19, 2015).

### C. Due Process Clause

#### 1. Aliens are Entitled to Due Process of Law

The Fifth Amendment of the United States Constitution entitles aliens to due process of law. *Demore v. Kim*, 538 U.S. 510, 543 (2003) ("It has been settled for over a century that all aliens within our territory are 'persons' entitled to the protection of the Due Process Clause."). Due process includes a substantive and procedural component.

Substantive due process protects "personal immunities which . . . are so rooted in the traditions and conscience of our people as to be ranked as fundamental, . . . or are implicit in the concept of ordered liberty." *Rochin v. California*, 342 U.S. 165, 169 (1952) (citation and internal quotation marks omitted). Thus, substantive due process "prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citation and internal quotation marks omitted).

Even if a government action that deprives a person of life, liberty, or property does not violate substantive due process, the action must be implemented in a fair manner. *Id*. This is referred to as "procedural" due process. *Id*. In other words, procedural due process concerns the constitutionality of the manner in which a person's life, liberty, or property interest is denied. *See Carey v. Piphus*, 435 U.S. 247, 259-60 (1978). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). But "unlike some legal rules, [due process] is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular

situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

## 2. Due Process Requirements Where an Alien Faces Prolonged Detention Pending Deportation

The detention of an alien pending a removal proceeding does not violate the alien's substantive due process rights. *Demore*, 538 U.S. at 528 ("[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goals."). However, the Ninth Circuit has held that when an alien is facing prolonged detention pending deportation, procedural due process entitles the alien to an individualized bond hearing before a neutral decision-maker. *Casas–Castrillon v. Dep't of Homeland Security*, 535 F.3d 942, 950 (9th Cir. 2008); *see also Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Diouf v. Mukasey*, 634 F.3d 1081, 1085-86 (9th Cir. 2011). These hearings are referred to as "*Casas*" bond hearings. *Singh*, 638 F.3d at 1203. The Ninth Circuit has established the following procedural requirements for *Casas* hearings:

1. The government must provide contemporaneous records of the hearing;

2. The IJ must place the burden of proof on the government;

3. The government must prove by clear and convincing evidence that the alien is a flight risk or danger to the community;[4] and

4. To evaluate whether the government has met its burden, IJs "should look" to the following factors set forth in *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006),[5] in particular "the alien's criminal record, including the

---

[4] "Clear and convincing evidence" is an intermediate burden of proof that requires more than proof by a preponderance of the evidence and less than proof beyond a reasonable doubt. *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060, 1087 (9th Cir. 2015). It requires "an abiding conviction that the truth of [the] factual contentions" at issue is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

[5] *Guerra* set forth the following nine factors that an IJ may consider: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee persecution or otherwise escape authorities, and (9) the alien's manner of entry to the United States. 24 I. & N. Dec. 37 at 40.

extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." Although the government need not establish "special dangerousness" to justify denying bond, the Ninth Circuit has cautioned that the alien's criminal history alone may be insufficient to show that an alien is a danger to the community.

*Singh*, 638 F.3d at 1203–09; s*ee also Rodriguez III*, 804 F.3d at 1069.

Procedural errors do not necessarily warrant relief. "To prevail on a due process challenge to deportation proceedings, [an alien] must show error and substantial prejudice.  A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings; [the court] will not simply presume prejudice."  *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000) (citations omitted); *see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008) (denying habeas relief to alien detainee because the alien could not show that alleged procedural due process violation adversely affected the IJ's bond determination); *Getachew* v. *INS*, 25 F.3d 841, 845 (9th Cir. 1994) (finding no procedural due process violation because petitioner could not show how BIA's alleged error prejudiced petitioner).

### III.  ANALYSIS OF THE PETITION

#### A. Respondents' Request that the Court Apply the Immediate Custodian Rule and Dismiss All Respondents Except Warden DeRosa

Petitioner names the following four respondents in the Petition:

1. Jeh Johnson, in his official capacity as Secretary of DHS;
2. Jon Gurule, in his official capacity as Phoenix Field Office Director of Enforcement and Removal;
3. Chuck DeRosa, in his official capacity as Warden at Corrections Corporation of America, Eloy Correctional Center; and
4. Loretta Lynch, in her official capacity as Attorney General of the United States.[6]

Respondents assert that the immediate custodian rule applies in this case.   They move to dismiss all Respondents except Warden DeRosa on the basis of lack of personal

---

[6] Pursuant to Fed. R. Civ. P. 25(d), Loretta Lynch has been substituted former U.S. Attorney General Eric Holder as a respondent in this matter.

jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  As discussed in Section II(B)(2), it is unclear whether the immediate custodian rule applies to aliens detained pending deportation.  No binding Supreme Court or Ninth Circuit cases have adopted the immediate custodian rule in the deportation context.  The undersigned recognizes that Petitioner is held at a private prison which contracts with the federal government to house immigration detainees.  The undersigned will not recommend dismissal of the Attorney General, the Secretary of DHS, and the ICE Phoenix Field Office Director from this habeas proceeding as the Respondents are individuals in charge of governmental agencies and/or offices under whose authority Petitioner is being detained.  *See Castillo-Hernandez v. Longshore*, 6 F. Supp. 3d 1198, 1214 (D. Colo. 2013) (stating that "out of an abundance of caution and mindful that this decision is almost certainly over-inclusive" the court would maintain the Attorney General, Director of DHS, ICE Field Office Director, and ICE Director as respondents in habeas proceeding filed by alien detainee); 8 C.F.R. §§ 1236.1(c)(6)(i)-(ii) (authorizing ICE field office directors to exercise his or her discretionary judgment to release certain aliens); *compare Aduord*, 2015 WL 7300055 (district judge accepted magistrate judge's Report and Recommendation that recommended that the Court dismiss John Gurule, the Director of the Arizona ICE Field Office because the rationale articulated in *Armentero I* does not extend to Mr. Gurule), *Report and Recommendation*, 2015 WL 7306678 (D. Ariz. Oct. 26, 2015).

## B.  All Six Counts in the Petition are Meritless

### 1.  Count One

Count One of the Petition contends that Petitioner's continued detention "is without justification because the IJ failed to prove that [Petitioner] presents a danger to the community."  (Doc. 1 at 12).  Petitioner asserts that the IJ improperly "relied exclusively on the extensiveness and seriousness of Petitioner's past criminal convictions to establish that Petitioner presents a danger to the community."  (*Id*. at 13).  The undersigned finds that at the core of Count One is the claim that clear and convincing

evidence does not support the IJ's conclusion that Petitioner is a danger to the community.

### i. Jurisdiction Over Count One

Citing to Eleventh Circuit case law, Respondents assert that the Court lacks jurisdiction to review a habeas petition that contests the weight and significance that an IJ gives to pieces of evidence.  (Doc. 13 at 6).  Respondents conclude that the Court does not have jurisdiction to review the "IJ's decision on Petitioner's dangerousness based on the evidence presented to it."  (*Id.*).

To reiterate, 8 U.S.C. § 1226(e) "does not limit habeas jurisdiction over questions of law, . . . including 'application of law to undisputed facts, sometimes referred to as mixed questions of law and fact.'"  *Singh*, 638 F.3d at 1202; *see also Ghahremani v. Gonzales*, 498 F.3d 993, 998 (9th Cir. 2007) ("Where the relevant facts are undisputed, creating a mixed question of law and fact, jurisdiction would be proper under our reasoning in *Ramadan*.").

It is not always immediately clear when an issue involving the application of law to fact should be classified and treated as a question of law.  The Ninth Circuit has explained that "[i]f application of the rule of law to the facts requires an inquiry that is 'essentially factual,' . . . one that is founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct,' . . . the determination should be classified as one of fact . . . ."  *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir. 1984) (en banc), *overruled on other grounds by Estate of Merchant v. Comm'r*, 947 F.2d 1390, 1392–93 (9th Cir. 1991).  But if a question "requires [the Court] to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then . . . the question should be classified as one of law and reviewed de novo."  *Id.*

The undersigned is unaware of any binding case law addressing whether the issue of an alien's dangerousness should be treated as a question of law.  However, the BIA has stated that "[w]hether an alien poses such a danger is a question of judgment that we

review *de novo* . . . ."[7]  *In re Garnica-Ramirez*, No. A090-828-217, 2010 WL 1250990, at *1 (BIA Mar. 2, 2010); *see also In re Zbigniew Golas*, No. A098 416 293, 2010 WL 2846347, at *1 (BIA June 25, 2010) (stating that whether the government satisfied its burden of proving by clear and convincing evidence that an alien is removable is a legal determination reviewed de novo).  In addition, the undersigned finds informative Ninth Circuit case law involving the detention of criminal defendants pending trial.  For instance, *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990) concerned an appeal of a district court's order that three co-defendants be detained without bail pending trial. The defendants challenged the order, contending that the government failed to present clear and convincing evidence that the defendants posed a present danger to the community.  The Ninth Circuit explained that the district judge's "conclusions based on its factual findings present a mixed question of fact and law and require the exercise of sound judgment as to the values underlying the legal principles."  *Id*. at 994.  The Ninth Circuit made an independent examination of the record to "determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights" and arrived at its conclusion de novo.  *Id*.; *see also United States v. Hir*, 517 F.3d 1081, 1086-89 (9th Cir. 2008); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir.1985) ("In reviewing a district court's order denying pretrial release, we must ensure not only that the factual findings support the conclusion reached, but also that the person's constitutional and statutory rights have been respected.").

At Petitioner's *Casas* hearing, procedural due process entitled Petitioner to be released on bond unless the government proved by clear and convincing evidence that Petitioner is a flight risk or danger to the community.  The relevant facts are undisputed. The question presented in Count One is whether the facts clearly and convincingly show that Petitioner poses a present danger to the community.  The answer implicates

---

[7] The BIA defines the term "question of judgment" as a mixed question of law and fact.  *In re VK*,  24 I. & N. Dec. 500, 502 (BIA 2008).

Petitioner's due process rights.  Thus, resolution of Count One requires the Court to apply the law to facts in a manner that "animates legal principles" and requires the Court to exercise "sound judgment as to the values underlying the legal principles."  *See Lankford v. Idaho*, 500 U.S. 110, 121 (1991) ("Due process is not a mechanical instrument.  It is not a yardstick.  It is a process.  It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.").

Accordingly, the undersigned finds that Count One presents a mixed question of fact and law that should be decided de novo.  The undersigned further finds that Count One states a colorable claim that Petitioner's constitutional right to due process was violated.  Therefore, the undersigned concludes that the Court has jurisdiction to review the claim.  *Torres-Aguilar*, 246 F.3d at 1271.

### ii.  Analysis of the Merits of Count One

In support of Count One, Petitioner relies on *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).  In *Singh*, an IJ held a *Casas* hearing to determine whether an alien should be released on bond pending resolution of the alien's removal proceedings.  *Id.* at 1201.  When the IJ denied bond, the alien appealed to the BIA.  *Id.*  The BIA dismissed the appeal, concluding that the alien was a danger to the community "given [the alien's] extensive criminal record" and was also a flight risk given that he was subject to a final order of removal.  *Id.*  The BIA did not articulate which standard of proof it used in making those findings.  At the time, no Ninth Circuit case law or statutory or regulatory authority specified the appropriate standard of proof at a *Casas* bond hearing.  *Id.* at 1203.

Noting that detention involves substantial liberty interests, the Ninth Circuit held that the clear and convincing evidence standard applies at a *Casas* bond hearing in determining whether the continued detention of an alien is justified.  *Id.*  The Ninth Circuit found that the evidence showing that the alien presented a danger was equivocal and it could not "conclude that the clear and convincing standard  . . . would not have

affected the outcome of the hearing." *Id.* at 1205.  The Court stated that "the BIA might conclude that [the alien's] largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased." *Id.* at 1205.  The Court found:

> [N]ot all criminal convictions conclusively establish that an alien presents a danger to the community, even where the crimes are serious enough to render the alien removable. . . . For example, some orders of removal may rest on convictions for relatively minor, non-violent offenses such as petty theft and receiving stolen property.  Moreover, a conviction could have occurred years ago, and the alien could well have led an entirely law-abiding life since then. In such cases, denial of bond on the basis of criminal history alone may not be warranted.

(*Id.* at 1206).

The undersigned has reviewed the evidence in the record and finds this case distinguishable from *Singh*.  Considering the record as a whole, the undersigned finds that the Government met its burden of showing by clear and convincing evidence that Petitioner presents a danger to the community:

1. Petitioner was convicted of serious crimes involving physical harm to other human beings, with one victim being a minor.  As noted by the IJ, Petitioner underwent domestic violence treatment after his first conviction in 2001, but then was convicted in 2007 for annoying and molesting a thirteen year old child, sexual battery, and four counts of preventing or dissuading a victim or witness.  (Doc. 1-3 at 5).

2. Petitioner attempted four separate times to prevent and dissuade the victim of his 2007 conviction from reporting the incident to authorities.  (*Id.*).  This conduct shows a disregard and lack of respect for the law.

3. Petitioner made a confession to police regarding the acts underlying his 2007 conviction.  (*Id.* at 24).  However, during Petitioner's September 2007 psychological evaluation, Petitioner stated that "We had a party at our home.  I woke up and caught the girl trying to give me oral sex.  That's all."  (*Id.* at 23).  When the evaluator asked

Petitioner if the victim "attacked him sexually," Petitioner stated "I guess so."  (*Id*.).
After the evaluator asked Petitioner to be honest, Petitioner stated "I woke up, she was on
top of me doing that and I pushed her off of me.  I was shocked."  (*Id*. at 24).  Petitioner
also stated that he "drank over twelve beers" and "was pretty hammered."  (*Id*.).
Petitioner's statements to the evaluator show that Petitioner has not accepted
responsibility for Petitioner's criminal conduct.[8]

4.   The 2007 psychological evaluation indicates that Petitioner has unresolved
mental health issues.  It states that Petitioner's scores on the Symptom Assessment
Checklist were in the sub-clinically elevated range on the Anxiety, Depression, and
Paranoia scales.  (*Id*. at 21).  The report also states that Petitioner has "most probably
been struggling with emotional conflicts beginning as far back as his early adolescence."
(*Id*. at 22).   Petitioner told the evaluator that he "usually drink[s] between six and eight
beers a day."  (*Id*. at 23).  The evaluator reported that Petitioner has an "obvious Alcohol
Abuse Disorder."  (*Id*. at 25).   Petitioner denied ever having received counseling or
psychotherapy.  (*Id*. at 23).

5.   The psychological evaluator recommended that Petitioner obtain rehabilitation
in a recognized outpatient sex offender treatment program.  (*Id*. at 26).   There is no
evidence that Petitioner has received sex offender treatment in prison.  The psychological
evaluator also noted that the likelihood that Petitioner would engage in any future sexual
misconduct would be further reduced if Petitioner overcame his alcohol abuse disorder.
(*Id*. at 25).   At the hearing, Petitioner's counsel admitted that Petitioner has been sober

---

[8] The undersigned acknowledges that Petitioner's November 12, 2012 declaration,
states that "I take responsibility for my actions . . . ."  (Doc. 1-3 at 15).  However, self-
serving statements such as this are accorded little weight in habeas proceedings.  *See,
e.g., Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("Self-serving statements by
a defendant that his conviction was constitutionally infirm are insufficient to overcome
the presumption of regularity accorded state convictions."); *Womack v. Del Papa*, 497
F.3d 998, 1004 (9th Cir. 2007) (finding petitioner's own self-serving statements
insufficient to support habeas claim without corroborating evidence).

because he does not have an opportunity to drink while incarcerated.[9]   (*Id*. at 42).
Petitioner admits that he needs treatment for his drinking problem.   (*Id*. at 17).   Yet there
is no evidence that Petitioner has received alcohol abuse counseling in prison.   This
indicates that Petitioner has not been rehabilitated of his alcohol abuse disorder.   The
undersigned is mindful of Petitioner's rehabilitative efforts made in prison (i.e. obtaining
a GED, holding jobs, tutoring other inmates, etc.), but the efforts do not address the
serious concerns regarding Petitioner's alcohol abuse disorder and molestation of a child.

The undersigned acknowledges the age of Petitioner's convictions.[10]   While the
age of a conviction in some cases may tip the scale in favor of an alien's release on bond,
the undersigned does not find that the age of Petitioner's convictions outweighs the
evidence discussed above.   Moreover, the undersigned has considered all of the
applicable *Guerra* factors and finds that many factors do weigh in Petitioner's favor.[11]
For example, Petitioner has resided in the United States since age nine, is married with
two children, and has been consistently employed both prior and during incarceration.
Petitioner's parents and siblings also reside in the United States.   In addition, Petitioner
has a fixed address in the United States.   Despite these considerations, however, the fact
remains that Petitioner has been convicted of crimes involving physical violence.   Those

---

[9] When Petitioner's counsel stated that Petitioner has been sober for six years, the IJ responded "Well, he is sober because he has not [had] an opportunity to consume alcohol because he is incarcerated.   Is that correct?"   (Doc. 1-3 at 42).   Petitioner's counsel replied "Yes, your honor."   (*Id*.).

[10] Petitioner argues that the age of his 2007 conviction renders it an unreliable predictor of his present dangerousness.   Petitioner cites to *Hayward v. Marshall*, 512 F.3d 536, 546 (9th Cir. 2008) to support this argument.   However, the Ninth Circuit on rehearing en banc vacated the opinion in *Hayward v. Marshall*, 512 F.3d 536, by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010), which was overruled on other grounds by *Swarthout v. Cooke*, 131 S.Ct. 859 (2011).   Moreover, *Hayward*, which involved a twenty-five year old conviction, is distinguishable from this case.

[11] Petitioner does not assert, and the undersigned does not find, that the following *Guerra* factors are relevant to the issue of Petitioner's dangerousness: record of appearance in court, history of immigration violations, any attempts to flee persecution or otherwise escape authorities, and the manner of entry to the United States.   These factors would be relevant to whether Petitioner is a flight risk.

convictions, coupled with the fact that Petitioner has received no treatment for his alcohol abuse disorder or for his act of child molestation, outweigh Petitioner's long-time residence, extensive family ties, and employment history in the United States. Further, the undersigned observes that Petitioner was a long-time resident, had extensive family ties, and a consistent employment record when Petitioner committed his crimes of violence.

As clear and convincing evidence shows that Petitioner is a present danger to the community, Petitioner's continued detention is not a violation of Petitioner's due process rights. It is therefore recommended that the Court dismiss Count One of the Petition.

### 2. Count Two

Petitioner argues that the IJ failed to provide Petitioner an individualized bond hearing by improperly dismissing Petitioner's rehabilitation efforts because they occurred in a controlled environment while incarcerated. Case law suggests that dismissal of an alien's rehabilitative efforts and sole reliance on the alien's criminal history may constitute a due process violation. *See Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) ("in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes"). The undersigned finds that Count Two presents a colorable question of law as to whether Petitioner's due process rights were violated. The Court therefore has jurisdiction to review the claim. *Torres-Aguilar*, 246 F.3d at 1271.

As discussed previously, Petitioner's rehabilitative efforts in prison did not include sex offender treatment, which was recommended by the psychological evaluator. Moreover, Petitioner's alcohol abuse disorder remains unresolved as Petitioner admits that maintaining sobriety outside of incarceration "will be hard." (Doc. 1-3 at 17). Petitioner's rehabilitative efforts made in prison do not outweigh the evidence discussed in Section III(B)(1)(ii) that clearly and convincingly shows that Petitioner is a present danger to the community. The BIA did not violate Petitioner's due process rights by

1   discounting Petitioner's rehabilitative efforts made in prison.  *See Bellido-Torres v.*

2   *I.N.S.*, 992 F.2d 127 (9th Cir. 1993) (rejecting habeas petitioner's argument that the BIA

3   improperly gave little weight to petitioner's "good promise of rehabilitation" while in

4   prison in light of the alien's drug use and drug-related offenses; the BIA "could properly

5   doubt whether [the petitioner] would avoid criminal activity once released from prison").

6   Accordingly, the undersigned recommends that the Court dismiss Count Two of the

7   Petition.

8                          **3.  Counts Three, Four, and Five**

9          Petitioner alleges that the IJ and BIA violated Petitioner's constitutional due

10  process, statutory and regulatory rights[12] by failing to meaningfully consider all evidence

11  presented by Petitioner.  In support of this claim, Petitioner alleges that:

12              i.   The IJ listed the psychological report and rehabilitation efforts,
                    but failed to give them any analysis or explain why Petitioner
13                  clearly and convincingly posed a danger to the community.
                    (Doc. 1 at 15).
14

15             ii.   The IJ erred by failing to "give reasoned consideration to the
                    fact that [Petitioner] was released four and a half years early
16                  from criminal custody early due to good behavior and
                    rehabilitative credits received while imprisoned."  (*Id*. at 15).
17

18            iii.   The IJ's finding that Petitioner "posed a danger to the
                    community was entirely inconsistent with the criminal justice
19                  system's early release of [Petitioner] from his criminal
                    imprisonment."  (*Id*. at 15-16).
20

21            iv.   The IJ and BIA failed to meaningfully consider other evidence
                    presented by Petitioner, such as Petitioner's fixed address,
22                  family ties within the United States, continuous employment
                    history while incarcerated and at the Eloy Detention Center, and
23                  Petitioner's rehabilitation efforts in the IJ's order.  (*Id*. at 16).

24         To the extent that Petitioner alleges that the BIA ignored significant probative

25

26  _____

27         [12] Petitioner cites to 8 C.F.R. § 1240.1(c), which states that "The immigration
    judge shall receive and consider material and relevant evidence . . . ."  (Doc. 1 at 17).
    Petitioner also cites to 8 U.S.C. § 1229a(b)(1), which requires an IJ to receive evidence
28  during removal proceedings.  (*Id*. at 16-17).

                                         - 17 -

evidence, the undersigned finds that Petitioner has raised a colorable question of law as to whether Petitioner's statutory, regulatory, and constitutional rights were violated. *See Vilchez v. Holder*, 682 F.3d 1195 (9th Cir. 2012) ("Because due process requires the IJ to consider the relevant evidence . . . we also have jurisdiction to review whether the IJ considered this evidence in deciding whether to grant cancellation of removal."). To the extent that Petitioner is claiming that the BIA abused its discretion in weighing the evidence, the undersigned finds that the Court does not have jurisdiction to review the claim. *Torres-Aguilar*, 246 F.3d at 1271; *Bazua-Cota v. Gonzalez*, 466 F.3d 747, 749 (9th Cir. 2006) (finding no jurisdiction over a habeas claim that re-characterized an abuse of discretion challenge to a BIA decision as an alleged due process violation).

While the BIA must consider relevant evidence, it is "not required to 'expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner.'" *Ramirez-Villalpando v. Holder*, 645 F.3d 1035, 1040 (9th Cir. 2010) (quoting *Wang v. Board of Immigration Appeals*, 437 F.3d 270, 275 (2nd Cir. 2006); *see also Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006) (holding that INS regulation requiring evidence to receive "individualized consideration" does not require that an IJ's decision discuss every piece of evidence—it only requires that the IJ consider all evidence); *Lopez v. Ashcroft*, 366 F.3d 799, 807 (9th Cir. 2004) (affirming that "the [IJ] does not have to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.") (citation and alteration omitted).

Further, it is presumed that the IJ and BIA reviews all evidence in the record. An alien must overcome that presumption when claiming that the IJ and BIA violated his or her due process rights by failing to consider relevant evidence. *Larita–Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir. 2000); *see also Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless [it] explicitly expresses otherwise.").

Here, nothing in the record indicates that the IJ or BIA failed to consider Petitioner's evidence. *Almaghzar*, 457 F.3d at 922 ("Because there is no evidence that the IJ failed to consider Almaghzar's documentary evidence, we accept the IJ's general statement that he considered all the evidence before him."). The IJ's decision, which the BIA adopted, mentions all of the probative evidence that Petitioner presented at the *Casas* hearing.[13] *Cf. Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011) ("failing to mention highly probative or potentially dispositive evidence" warrants an inference that the evidence was not considered). Petitioner has failed to rebut the presumption that the IJ and BIA considered all of the evidence in the record. It is therefore recommended that the Court dismiss Counts Three, Four, and Five.

### 4. Count Six

As discussed previously, the Ninth Circuit has stated that in making a bond determination under 8 U.S.C. § 1226(a), IJs "should look" to the following factors set forth in *Guerra*:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee persecution or otherwise escape authorities, and (9) the alien's manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. 37 at 40. *Guerra* states that the IJ has "broad discretion in deciding the factors that he or she may consider in custody redeterminations. The

---

[13] Regarding Petitioner's assertion that the IJ erred by not giving "reasoned consideration" to Petitioner's early release from prison, Petitioner has failed to show prejudice. *Lata*, 204 F.3d at 1241. There is no conclusive evidence in the record as to why Petitioner was released early. This is conceded by Petitioner, who speculates that the early release was "most likely because the State of California granted him early release based on good behavior and rehabilitative credits received while imprisoned . . . ." (Doc. 1-1 at 20).

Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id.* It is unclear whether the Ninth Circuit's statement that IJs "should look" to the *Guerra* factors intended to limit the amount of discretion that IJs have in selecting which factors to consider. *Singh*, 638 F.3d at 1206; *Rodriguez III*, 804 F.3d at 1069 (stating that "[t]o evaluate whether the government has met its burden, [in *Singh*] we instructed IJs to consider the factors set forth" in *Guerra*). The Ninth Circuit, however, found that the most pertinent factor in assessing dangerousness is "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206.

The final count in the Petition alleges that the IJ committed constitutional error by failing to consider all of the relevant *Guerra* factors. Petitioner asserts that the IJ only considered the sixth *Guerra* factor (the alien's criminal record) to establish that Petitioner poses a danger to the community. Petitioner argues that the IJ also should have considered the following five *Guerra* factors: (i) whether Petitioner has a fixed address in the United States; (ii) Petitioner's length of residence in the United States; (iii) Petitioner's family ties in the United States; (iv) Petitioner's employment history; and (v) "the recency of his criminal history."[14]  (Doc. 1-1 at 25).  Petitioner contends that the alleged failure to consider all relevant factors in making the bond determination violated Petitioner's due process rights. Petitioner further contends that there was no basis for choosing one factor exclusively when other factors, such as Petitioner's family ties, employment history, and length of residence cast serious doubt that Petitioner poses a present danger to the community.

To the extent that Petitioner asserts that the IJ's alleged failure to consider all of the relevant *Guerra* factors violated Petitioner's due process rights, the undersigned finds

---

[14] As Respondents point out (Doc. 13 at 16-17), this is not a separate *Guerra* factor, but is an excerpt of the sixth *Guerra* factor ("the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses").

that Petitioner has presented a colorable question of law. *See Dela Cruz v. Napolitano*, 764 F. Supp. 2d 1197, 1203 (S.D. Cal. 2011) (finding that the district court had jurisdiction over a habeas petitioner's claim that the IJ violated the petitioner's due process rights by considering certain factors not explicitly set forth in *Guerra*). To the extent that Petitioner is claiming that the IJ abused his discretion in how he weighed the factors, the undersigned finds that the Court does not have jurisdiction to review the claim. *Torres-Aguilar*, 246 F.3d at 1271; *Bazua-Cota*, 466 F.3d at 749.

Petitioner presents no authority holding that the IJ must discuss in detail the *Guerra* factors in his or her decision. *See Almaghzar*, 457 F.3d at 922 (holding that INS regulation requiring evidence to receive "individualized consideration" does not require that an IJ's decision discuss every piece of evidence—it only requires that the IJ consider all evidence). There is no evidence that the IJ did not consider the relevant *Guerra* factors in denying Petitioner's release on bond. As Petitioner concedes, "the IJ mentioned the facts of [Petitioner's] family ties, his rehabilitation efforts, and his psychological report . . . ." (Doc. 1-1 at 25). The IJ also discussed Petitioner's fixed address (i.e. that Petitioner will reside with his sister if released), Petitioner's employment history while incarcerated and the commendations received from supervisors,[15] the years in which Petitioner was convicted, and the length of time in which Petitioner has lived in the United States. Hence, the IJ's decision discusses all five of the *Guerra* factors that Petitioner asserts are relevant to his release. It may be inferred from that discussion that the IJ considered the relevant *Guerra* factors. *Cf. Cole*, 659 F.3d at 772 ("failing to mention highly probative or potentially dispositive evidence" warrants an inference that the evidence was not considered). The undersigned therefore

---

[15] Petitioner is correct that the IJ did not summarize Petitioner's pre-incarceration employment history. (Doc. 1-1 at 27-28). However, Petitioner has failed to show how this alleged error prejudiced Petitioner. *Lata*, 204 F.3d at 1246.

recommends that the Court dismiss Count Six.

## IV. CONCLUSION

The record establishes that Petitioner's *Casas* hearing was legally sufficient and that Petitioner's continued detention does not violate statutory, regulatory, or constitutional law.  First, the government made a contemporaneous record of the hearing. (Doc. 1-3 at 36-44).  Second, the transcript of the hearing confirms that the IJ properly placed the burden on the government to establish by clear and convincing evidence that Petitioner is a danger to the community or a flight risk.  Finally, the government satisfied its burden of proving by clear and convincing evidence that Petitioner is a danger to the community.  Therefore, although the IJ denied bond, Petitioner's due process rights were satisfied.  The undersigned recommends that the Court deny and dismiss the Petition (Doc. 1).

Accordingly,

**IT IS RECOMMENDED** that the Court deny Respondents' request to dismiss Respondents Johnson, Lynch, and Gurule.

**IT IS FURTHER RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the

findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 22nd day of February, 2016.

_____

Eileen S. Willett
United States Magistrate Judge